IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| CENTRAL GEORGIA ANESTHESIA SERVICES, P.C., | : | |
| | : | |
| Plaintiff, | : | 5:06-CV-25 (CAR) |
| | : | |
| vs. | : | |
| | : | |
| THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES and DISABILITY MANAGEMENT SERVICES, INC., | : | |
| | : | |
| Defendants. | : | |

**ORDER ON PLAINTIFF'S MOTION TO COMPEL**

Before the Court is Plaintiff Central Georgia Anesthesia Services, P.C.'s ("CGAS" or "Plaintiff") Motion to Compel Defendants The Equitable Life Assurance Society of the United States ("Equitable") and Disability Management Services, Inc. ("DMS") (jointly "Defendants") to produce certain items of discovery [Doc. 40]. For the reasons set forth below, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion to Compel [Doc. 40].

**I. BACKGROUND**

The facts of this case are a bit confusing, but are essentially as follows. Plaintiff is a corporation originally comprised of seven anesthesiologists, including Dr. Sterla

Stefansson. In 1989, Plaintiff purchased a disability income protection policy for Dr. Stefansson from Defendant Equitable. The policy insured the purchase of Dr. Stefansson's interest upon his disability, with $400,000 as the maximum benefit.

When Dr. Stefansson became disabled in 2002, Plaintiff filed its claim for benefits under its disability income protection policy requesting the maximum allowable benefit. Equitable, however, took the position that Dr. Stefansson's interest was not worth $400,000.00, but only $18,000.00. The current breach of contract lawsuit, with a claim for reasonable attorneys' fees and damages for Defendants' bad faith refusal to pay, followed.

During discovery, Plaintiff learned of facts that may substantiate its bad faith claims, including information that Equitable was losing money on its disability income business protection policies and that DMS potentially incentivized its employees to deny or take hard stances on such claims in an effort to resolve the claims for less than the reserve and/or policy benefit amount. Wishing to explore further, Plaintiff requested certain discovery now sought to be compelled. Defendants responded with boilerplate objections to the relevancy of the discovery sought, the undue burdens associated with its production, etc. As a result, Plaintiff filed the instant motion to compel asking this Court to compel Defendants to answer the following interrogatories:

Interrogatory No. 4: Describe how the reserve was set for the Policy and/or claim at issue in this case and identify the amount of the reserve.

Interrogatory No. 7: Identify the date and all of the reasons why The Equitable stopped selling and/or issuing disability income business protection policies.

Additionally, Plaintiff asks this Court to compel Defendants to produce the following documents:

Request for Production No. 8: Documents describing how employees who handle, process and/or oversee claims are paid for their services. To the extent employees are compensated differently by type of claim, limit your response to disability income business protection policies.

Request for Production No. 10: All documents, including internal correspondence, memoranda, and emails, and/or financial statements relating to: (a) Equitable and/or DMS losing money on claims under disability income business protection plan and/or (b) the need of Equitable and/or DMS to more strictly review claims and/or demands for payment on disability income business protection policies.

The Court now turns to the substance of Plaintiff's request.

## II. DISCUSSION

Generally, Federal Rule of Civil Procedure 26(b)(1) entitles parties to discovery regarding any non-privileged matter that is relevant to any claim or defense: "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." A court may, however, limit discovery of relevant material if it determines that:

> the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive . . .; or . . . the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(i) & (iii). In other words, discovery is not limitless—"the information sought must be relevant and not overly burdensome to the responding party." Wright v. AmSouth Bancorporation, 320 F.3d 1198, 1205 (11th Cir. 2003) (internal quotations omitted).

In this case, Plaintiff seeks information it believes is relevant to its breach of

contract/bad faith claims. Defendants make several arguments as to why the information should not be produced. Defendants first argue that Plaintiff's bad faith claim is without legal merit. Alternatively, Defendants argue that the information sought is not relevant to either the bad faith claim or the breach of contract claim.

Defendants' first argument—that Plaintiff's bad faith claim is legally inviable—is not properly before the Court at this stage of the proceedings. Legal sufficiency of Plaintiff's claim is an argument more appropriately made in a dispositive motion. The Court is unwilling to look into the merits of Plaintiff's bad faith claim without the benefit of briefing from both parties.

Defendants' second argument—that the requested information is not relevant to Plaintiff's bad faith claim or the breach of contract claim—requires the Court to analyze each of the discovery requests separately. As Plaintiff points out, in analyzing bad faith refusal to pay insurance claims, the courts look to see whether the insurer had reasonable and probable cause for its refusal to pay claim, as determined by the *facts* and *circumstances* and the *knowledge* held by the insurer at the time of refusal. See Moon v. Mercury Ins. Co. of GA, 253 S.E.2d 532, 535 (Ct. App. 2002) (emphasis added). Therefore, any information that may shed light on the aforementioned factors is discoverable.

A. The Amount of the Reserve and Method of Calculation

The courts diverge on whether reserves are discoverable.  Some courts, as Defendants point out, routinely deny motions to compel disclosure of reserves because the setting of the reserves is usually mandated, not volitional, and therefore not indicative of the insurer's valuation of a particular claim.  See Signature Dev. Co. Inc. v. Royal Ins. Co. of America, 230 F.3d 1215, 1223 (10th Cir. 2000) (stating that reserves do not necessarily constitute a final objective assessment of a claim's worth).  The overwhelming majority of courts, however, find reserves discoverable, especially in cases involving bad faith claims because, although mandated, the reserves do bear some relationship to the insured's calculation of its potential liability.  See, e.g., Culberton v. Shelter Mutual Ins. Co., 1998 WL 743592 *1 (E.D. La. 1998) (granting motion to compel reserve information and "choos[ing] to follow that line of cases which hold that reserve information is discoverable where a claim of bad faith is asserted").  The Court finds the latter line of cases persuasive.

In this case, the parties argue over the intended numerical value of the benefits payable under the policy.  As such, the reserve may reveal what Defendants understood the benefit under the policy to be at the time they entered into the agreement.  Moreover, the provision of this information does not burden Defendants in any way.  Accordingly, the Court **GRANTS** Plaintiff's Motion to Compel as to Interrogatory No. 4 and **ORDERS** Defendants to provide answers requested therein.

### B. The Date and Reasons Behind Equitable's Decision to Stop Selling/Issuing Disability Income Business Protection Plans

Defendants state that Equitable ceased issuing disability policies, such as the one at issue in this case, in 1992—14 years before the start of this litigation. In light of the passage of time, the Court finds that the information sought is not relevant to the current action. Accordingly, the Court **DENIES** Plaintiff's Motion to Compel as to Interrogatory No. 7.

### C. Employee Compensation

Information on employee compensation may relate to Defendants' intent and surrounding circumstances in analyzing the breach of contract/bad faith claims and is therefore discoverable. Accordingly, the Court **GRANTS** Plaintiff's Motion to Compel as to Request for Production No. 8 and **ORDERS** Defendants to produce the information requested therein.

### D. Communications and Financial Statements Regarding Losses on Business Protection Policies

Similar to employee compensation, the communications and financial statements regarding losses on business protection policies may relate to Defendants' intent and surrounding circumstances and are therefore also discoverable. Accordingly, the Court **GRANTS** Plaintiff's Motion to Compel as to Request for Production No. 10 and

**ORDERS** Defendants to produce the information requested therein.

### III.  Conclusion

For the reasons stated above, the Court **GRANTS in part** and **DENIES in part** Plaintiff's Motion to Compel [Doc. 40].  Accordingly, the Court **ORDERS** Defendants to provide Plaintiff, within 14 days of the date of this order, the information requested in Interrogatory No. 4, Request for Production No. 8, and Request for Production No. 10.

**SO ORDERED,**  this 25th day of July, 2007.

S/ C. Ashley Royal  
C. ASHLEY ROYAL  
UNITED STATES DISTRICT JUDGE

EHE/ssh